IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RUDY ACIO,<br><br>     Plaintiff,<br><br> vs.<br><br>KYO-YA OHANA, LLC,<br><br>     Defendant. | CIV. NO. 21-00053 JMS-KJM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 35 |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 35

## I. INTRODUCTION

Defendant Kyo-ya Ohana, LLC ("Defendant" or "Kyo-ya")[1] moves for summary judgment in this suit brought by a former Kyo-ya employee, pro se Plaintiff Rudi Acio ("Plaintiff" or "Acio"), alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. *See* ECF No. 35.

At this summary-judgment stage, the court construes the evidence in the light most favorable to the non-moving party. *See, e.g.*, *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020). So construed, Acio was absent from work

---

[1] On May 11, 2021, the parties stipulated to substitute Kyo-ya as Defendant in place of the original named Defendant, "Moana Surfrider Westin Resort and Spa." ECF No. 17.

approximately 57 days during the 12 months preceding his termination from employment on January 21, 2020.  Even if some of those absences could have been excused or authorized under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., under the uncontested evidence in the record, at least 41 days (spread over 19 different occasions) were non-FMLA absences.  Those absences far exceed the number allowed by Kyo-ya's absenteeism policy, which defines "excessive absenteeism" as "[m]ore that six (6) separate absences within" the 12-month period preceding the most recent absence.  ECF No. 36-9 at PageID # 536.  That is, it is uncontested that Acio was terminated for violating Kyo-ya's absenteeism policy, not because he was disabled (assuming his bad back could constitute a disability under the ADA).

It follows that Acio's ADA claims necessarily fail at this summary judgment stage for, at minimum, a lack of causation—his termination could not have been "on the basis of disability."  *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment."); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (reiterating that an ADA plaintiff must show, among other elements, that "the adverse employment action would not have occurred but for [his] disability").  And so, as explained in more detail to follow, the court GRANTS Kyo-ya's Motion for Summary Judgment, ECF No. 35.

## II. **BACKGROUND**

### A.    **Factual Background**

Kyo-ya employed Acio as a utility steward at the Moana Surfrider Westin Resort and Spa in Waikiki from June 15, 2015 until his termination on January 21, 2020.  *See* ECF No. 1 at PageID ## 9-10; ECF No. 36-3 at PageID # 331; ECF No. 36-7 at PageID # 509.  The job description for a utility steward was:

> UTILITY STEWARD:  Performs general or specialized cleaning and other miscellaneous unskilled tasks assigned to the Stewards Department.  Operates dishwashing machine; transfers foodstuffs and required items to the banquet areas; peels vegetables and maintains the general cleanliness of the kitchen facilities and areas.  May serve as a Kitchen Runner.  May perform Bushelp duties in the employees' cafeteria and may be responsible for supplying the cafeteria with silverware, dishes, glassware, condiments and other essential items.

ECF No. 36-9 at PageID # 540; *see also* ECF No. 36-4 at PageID ## 448-452.  Acio admitted at his deposition that the job required his physical presence, i.e., that none of the duties could be performed at home.  *See* ECF No. 36-3 at PageID ## 336-37.

Under its collective bargaining agreement with the Unite Here Local 5 labor union, Kyo-ya had the following absenteeism policy for its employees:

> **Absenteeism Policy.** . . . .  The Employer [Kyo-ya] has set guidelines pertaining to reported absences and has established criteria on what is considered excessive

3

absenteeism. More than six (6) separate absences within the most recent 12-month period is excessive. Absences are defined as failure to report to work due to illness or injuries and/or any unexcused failure to report to work, except in situations as stated below.

The twelve (12) month period is a rolling twelve months in which the month with the most recent absence serves as the starting point. For example: If the most recent absence occurs in August, you would go back twelve (12) months using August as the first month. You would be reviewing the period of August in the current year, through September of the previous year. More than six (6) separate absences within this period would constitute excessive absenteeism.

Absences of the following nature are not included in the total:
. . . .

11.) Absence due to injury and/or illness requiring ongoing care such as chemotherapy, dialysis or other required therapy[.]

12.) Authorized FMLA Leave[.]

The following steps of progressive discipline may be administered to employees that fall into the category of excessive absenteeism:

- • Verbal Warning with counseling

- • Written Warning with counseling

- • Suspension; or where appropriate[,] medical leave of absence without pay to participate in the Hotel sponsored Employee Assistance Program.

- • Termination[.]

4

ECF No. 36-9 at PageID # 536.

In November 2012 (before being hired by Kyo-ya), according to a Stipulated Compromise and Release Agreement in the record, Acio injured his lower back during a work accident at Joe Kim's Kim Chee. *See* ECF No. 36-5 at PageID # 475. On February 10, 2015, Acio and an insurance carrier signed a workers' compensation benefits agreement regarding that injury, stating among other matters that "[Acio] has attained medical stability, maximum medical improvement, and as complete a recovery as possible under the circumstances." *Id.* at PageID # 477.

After Acio was hired by Kyo-ya in 2015, he had many incidents of absences from work. Acio was absent from April 8, 2016 to April 18, 2016, which constituted his "9th absence in a rolling 12 month period." ECF No. 36-4 at PageID ## 453-54. Acio told an investigator on April 21, 2016 that "I have gout and I went to the doctor for it because HR told me to get a [doctor's] note and they approve for non FMLA every time for the gout." *Id*. at PageID # 454. There is no evidence in the record that these absences were excused under the FMLA.[2]

---

[2] Generally, "[t]he FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for a family members who are ill, or to care for new babies." *Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 1119 (9th Cir. 2001) (citing 29 U.S.C. § 2612). "[T]he Act entitles covered employees to up to twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights." *Id.* (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). And the FMLA's "regulations provide employers with a menu of choices for how to determine the

(continued . . . )

On December 8, 2016, Acio was injured in a non-work-related motor vehicle accident. *See* ECF 36-3 at PageID ## 351-52. He testified at his deposition that he suffered "back pain" during that accident. *Id.* at PageID # 353. He took six continuous months off from Kyo-ya, until June 2017. *Id.* at PageID ## 353-54. He was allowed to remain as an employee during that time, *id.* at PageID # 354, and the court presumes that this leave of absence was authorized. He resumed working for Kyo-ya on June 15, 2017. *See id.* at PageID # 355.

On February 14, 2018, Acio sustained a second non-work-related motor vehicle accident. *Id.* at PageID ## 355-56. He testified that this accident affected his back as well. *Id.* at PageID # 357. And as with his other motor vehicle accident, he took six continuous months off from work. *Id.* He was certified by a physician as disabled (at least for purposes of a Kyo-ya "Work Status Certification" form) with a medical diagnosis of "back pain" until August 8, 2018,

---

'twelve-month period' during which an employee is entitled to twelve weeks of FMLA protected leave[.]" *Id.* at 1120 (citing 29 C.F.R. § 825.200(b)).

Although the FMLA also prohibits certain employment actions that interfere with FMLA rights, *id.* at 1123-24, it is important to note that this action is not brought under the FMLA—this action is a discrimination and ADA suit only. The parties have not addressed, and the court has not analyzed, whether any of Defendant's actions might have implicated the FMLA. At this summary-judgment stage, the court only makes certain assumptions about authorized FMLA leave because Defendant's absenteeism policy excludes "authorized FMLA leave" from consideration as "excessive absenteeism." *See* ECF No. 36-9 at PageID # 536.

and he was cleared to return to "regular duty" on August 9, 2018.  ECF No. 36-6 at

PageID # 488.[3]  The court also presumes that this leave of absence was authorized.

After being cleared to return to work on August 9, 2018, Acio had

another series of absences, between August 18, 2018 to April 14, 2019, totaling 25

days of missed work.  *See* ECF No. 36-14 at PageID # 551.  At least 17 of those 25

days occurred after January 21, 2019 (which is 12 months before Acio's

termination on January 21, 2020).  On April 15, 2019, Kyo-ya issued Acio a

"Notice of Excessive Absenteeism" that categorizes the 25 absent days as 14

different "occurrences," 12 of those "occurrences" transpiring after January 21,

2019.  *See id.* at PageID ## 551-52.  There is no evidence in the record indicating

that any of these absences were excused, whether under the FMLA or otherwise.

Acio was absent many other times after the April 15, 2019 Notice of

Excessive Absenteeism, until his termination.  And given Kyo-ya's attendance

policy, which concerns the rolling 12-month period prior to termination, the court

focuses on the 12 months prior to the January 21, 2020 termination date.  The court

---

[3] Acio testified that, in February 2018, he requested "light duty" as an accommodation, but was told that Kyo-ya did not have any light duty.  *See* ECF No. 36-3 at PageID ## 361-62. There is no evidence that Kyo-ya refused any other requested accommodation such as, for example, a back brace or stretching breaks.  In any event, a failure-to-accommodate claim based on this February 2018 incident would be time-barred because Acio first filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") on April 30, 2020.  *See, e.g.*, *Crowley v. Wal-Mart Stores, Inc.*, 2018 WL 4345251, at *8 (D. Haw. Sept. 11, 2018) ("Under the ADA, plaintiffs must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 180 or 300 days of the alleged unlawful employment practice.") (citing 42 U.S.C. §§ 12117(a) and 2000e-5)).

summarizes those absences, including those discussed in the April 15, 2019 Notice of Excessive Absenteeism, in the following table (as described in detail after the table):

| Occurrence | Date(s) of absence(s) | Number of days absent | Potential FMLA excuse? | Unexcused absent days |
|---|---|---|---|---|
| 1 | 2/2/2019 | 1 | No | 1 |
| 2 | 2/11/2019 | 1 | No | 1 |
| 3 | 2/19 to 2/21/2019 | 3 | No | 3 |
| 4 | 2/24/2019 | 1 | No | 1 |
| 5 | 3/8/2019 | 1 | No | 1 |
| 6 | 3/14/2019 | 1 | No | 1 |
| 7 | 3/18 to 3/19/2019 | 2 | No | 2 |
| 8 | 3/27/2019 | 1 | No | 1 |
| 9 | 4/4/2019 | 1 | No | 1 |
| 10 | 4/7/2019 | 1 | No | 1 |
| 11 | 4/11/2019 | 1 | No | 1 |
| 12 | 4/12 to 4/14/2019 | 3 | No | 3 |
| 13 | 4/20 to 4/24/2019 | 5 | Yes | |
| 14 | 4/25 to 4/28/2019 | 4 | No | 4 |
| 15 | 5/3 to 5/8/2019 | 6 | Yes | |
| 16 | 5/12 to 5/14/2019 | 3 | No | 3 |
| 17 | 6/11 to 6/13/2019 | 3 | Yes | |
| 18 | 6/20 to 6/21/2019 | 2 | No | 2 |
| 19 | 6/26 to 6/30/2019 | 5 | No | 5 |
| 20 | 7/4 to 7/8/2019 | 5 | No | 5 |
| 21 | 7/14 to 7/17/2019 | 4 | No | 4 |
| 22 | 8/10 to 8/21/2019 | assume 0 | Yes | |
| 23 | 9/19 to 9/20/2019 | 2 | Yes | |
| 24 | 1/10/2020 | 1 | No | 1 |
| **Totals** | | **57** | | **41** |

From April 20, 2019 to April 24, 2019, Acio was absent for 5 more days due to "back pain." ECF No. 36-6 at PageID # 489. For this period, Acio's physician certified him as disabled, with clearance to "return to regular duty

8

effective" April 25, 2019.  *Id.*  The court thus presumes that this April 20th to 24th period could have been authorized under the FMLA.

Acio was absent from April 25, 2019 to April 28, 2019, *see* ECF No. 36-11 at PageID # 543, with no evidence in the record indicating that any of these days were excused, whether by the FMLA or otherwise.  Acio was then absent from May 3, 2019 to May 8, 2019.  *Id.*  The record includes a certification of disability for this period, with a "return to regular duty effective" May 9, 2019. ECF No. 36-6 at PageID # 490.  The court thus presumes that this May 3rd to 8th period could have been authorized under the FMLA.  Acio was further absent from May 12, 2019 to May 14, 2019, ECF No. 36-11 at PageID # 543, with no evidence in the record indicating that any of those days were excused, whether under the FMLA or otherwise.

On May 23, 2019, Kyo-ya conducted an investigation regarding the absences from "4/25-4/28, 5/3-5/8, 5/12-5/14," which Kyo-ya considered to be "excessive absenteeism."  *Id.*  Kyo-ya then issued Acio a formal "Record of Performance" of a "coaching" action for excessive absenteeism.  *See* ECF No. 36-12 at PageID # 545.  Specifically, Acio was told that "[t]his is to advise you that your [latest] absence on 5/12-5/14/19 is considered to be in violation of company excessive absenteeism policy."  *Id.*  He was given "performance expectations" stating in part:

> Rudy Acio is receiving a Coaching for excessive
> absenteeism. . . .  It is important that you make
> immediate improvements to your attendance reporting to
> work as scheduled.  Moving forward[,] in the event you
> need to call off for your serious health condition, you
> must get the supporting doctor's note for the issue. . . .
> Further violations of the Absenteeism Policy may result
> in progressively severe [disciplinary] action up to and
> including suspensions and/or termination.

*Id.*

Acio was absent again from June 11, 2019 to June 13, 2019, due to "back pain."  ECF No. 36-6 at PageID # 493.  Acio's physician certified him as disabled for this time period, with a clearance to "return to regular duty effective" June 14, 2019.  *Id.*  The court thus presumes that this June 11th to 13th period could have been excused under the FMLA.

Acio was also absent from June 20, 2019 to June 21, 2019, and again from June 26, 2019 to June 30, 2019.  *See id.* at PageID # 494.  The record contains no evidence indicating that any of these days were excused, whether under the FMLA or otherwise.

Meanwhile, on June 25, 2019, Acio received formal "verbal counseling" (documented in a "Record of Performance" dated June 20, 2019) advising him that "your latest absence on 6/11-6/15/19 (sic) is considered to be in violation of company excessive absenteeism policy."  *Id.* at PageID # 491.  The counseling notice documented how Kyo-ya had previously issued Acio a formal

notice of excessive absenteeism on April 15, 2019, and a "coaching" action on May 24, 2019. *Id.* And it repeated a warning, among others, that "[f]urther violations of the Absenteeism Policy may result in progressively severe [disciplinary] action up to and including suspensions and/or termination." *Id.*

Acio was absent again from July 4, 2019 to July 8, 2019, and from July 14, 2019 to July 17, 2019. *See id.* at PageID # 496. The record contains no evidence indicating that any of these days were excused, whether under the FMLA or otherwise.

Meanwhile, on July 11, 2019, Acio received formal "written counseling" (documented in a "Record of Performance" dated July 11, 2019) advising him that "your latest absence on 6/26-6/30/19 is considered to be in violation of company excessive absenteeism policy." *Id.* at PageID # 494. This counseling notice further told Acio that "[y]ou were also absent on 6/20 – 6/21/19, which is considered to be excessive in a 12-month rolling calendar year." *Id.* As with prior counseling notices, he was given "performance expectations" stating in part:

> Rudy Acio is receiving a written warning for excessive absenteeism. . . . It is important that you make immediate improvements to your attendance and reporting to work as scheduled. Moving forward, in the event you need to call off for your serious health condition, you must get the supporting doctor's note for the issue. We are also mandating that you attend [the Employee Assistance Program] to help assist and follow

> their recommended course of action. . . .  Further
> violations of the Absenteeism Policy may result in
> progressive [disciplinary] action up to and including
> suspensions and/or termination.

*Id.* at PageID # 495.

On July 24, 2019, Acio received a formal 5-day suspension based on his unexcused absences on July 4th to 8th and July 14th to 17th.  *Id.* at PageID # 496.  During an investigation of these absences, Acio explained that he had "back pain and [a] family problem."  ECF No. 36-7 at PageID # 521.  Similar to his written warning, he was given "performance expectations" that stated in part:

> Rudy Acio is receiving a 5-day suspension for excessive
> absenteeism. . . .  It is important that you make
> immediate improvements to your attendance and
> reporting to work as scheduled.  Moving forward, in the
> event you need to call off for your serious health
> condition, you must get the supporting doctor's note for
> the issue. . . .  Further violations of the Absenteeism
> Policy may result in progressively severe [disciplinary]
> action up to and including suspensions and/or
> termination.

ECF No. 36-6 at PageID # 497.

Acio could have been absent again from August 10, 2019 to August 21, 2019.  *See* ECF No. 36-6 at PageID # 498.  It is unclear how many days during this period he was scheduled to work, but it could have been as many as all 11

days.[4]  Acio's physician certified him as disabled for this time period for an

"illness" (the form does not specify whether it was for back pain), with a clearance

to "return to regular duty effective" August 22, 2019.  *Id.*  The court thus presumes

that this August 10th to 21st period could have been excused under the FMLA.

But because it is unclear on which days Acio was absent during this period,

construing the evidence in the light most favorable to Acio, the court will presume

that he was not absent during this time frame.

On August 13, 2019, Acio's physician signed a "Certification of

Health Care Provider for Employee's Serious Health Condition (Family and

Medical Leave Act)."  *Id.* at PageID # 499.  The form contains a handwritten

phrase "Chronic (?) Back Pain" as "other relevant medical facts . . . related to the

condition for which the employee seeks leave."  *Id.* at PageID # 500.  As the

"[a]pproximate date condition commenced," the form states "8-10-19" with a

"[p]robable duration of condition" as "8-10-19 — 8-10-20."  *Id.*  The physician

noted that "[p]atient will be going to Procare Physical Therapy, [LLC] for physical

and massage therapy once a week for 4 weeks."  *Id.*  It also answered yes to a

question "[w]ill the employee be incapacitated for a single continuous period of

time due to his/her medical condition . . . ," with the estimated "beginning and

---

[4] Acio testified at his deposition that he worked 40 hours a week after August 9, 2018 until he was terminated.  ECF No. 36-3 at PageID # 363.

ending dates for the period of incapacity" as "08-10-19 to 09-11-19."  ECF No. 36-7 at PageID # 501.

Acio was again absent on September 19, 2019 to September 20, 2019. *See id.* at PageID # 504.  Acio's physician certified him as disabled for these days with a "medical diagnosis" of "back pain," and he was cleared to "return to regular duty effective" September 21, 2019.  *Id.*  The court thus presumes that this September 19th and 20th period could have been excused under the FMLA.

On September 21, 2019, Kyo-ya again investigated Acio for excessive absenteeism based on his latest absences.  *Id.* at PageID # 523.  During this investigation, he told Kyo-ya that he missed work on September 19th and 20th due to "back pain and running nose."  *Id.* at PageID # 524.  Subsequently, on September 26, 2019, Acio received a 10-day suspension for excessive absenteeism. *Id.* at PageID # 505.  He was advised that his "latest absence on 9/19/19 – 9/20/19 [was] considered to be in violation of company excessive absenteeism policy."

Finally, Acio was absent on January 10, 2020.  *Id.* at PageID # 507. The next day, Acio obtained a physician's certification that Acio had an "illness" ("body aches"), with a clearance to return to regular duty effective January 11, 2020.  *Id.* at PageID # 526.  During a January 14, 2020 investigation by Kyo-ya, Acio admitted that he was not actually ill on January 10, 2020.  *Id.* at PageID # 528.  He told the investigator "[t]hat day I'm not sick [but] I am having family

14

problem.  If I knew they were going to put me sick I would not call out and I would come in to work." *Id.*  He was asked if he thought his absences were "related to FMLA" and he responded "no." *Id.*  He reiterated that "[t]his incident is not a sick call but a family incident and wanting to [request] off." *Id.*  At his deposition, he testified that "[w]hat I know is body ache and not feeling good [due to a family problem] is just like the same."  ECF No. 36-3 at PageID # 408.

On January 16, 2020, Acio received a "suspension pending termination," ECF No. 36-7 at PageID ## 507-08, based on his latest absence.  The suspension stated:

> This is to advise you that your latest absence on l/10/2020 is considered to be in violation of company excessive absenteeism policy.  During the investigation, you stated that you texted and called your manager the day prior requesting to take off due to a family problem and that you did not feel good.  As requested by your manager, you provided a doctor's note upon return on 1/11/2020 with a medical diagnosis of body aches signed by a physician.  You later stated that the real reason for the absence was due to family problems.  As you were unable to work your scheduled shift, this is considered an absence.

*Id.* at PageID # 507.  Kyo-ya then formally terminated Acio's employment on January 21, 2020 for excessive absenteeism.  *See id.* at PageID # 510.  He was told that "your latest absence on 1/10/2020 is considered to be in violation of company absenteeism policy." *Id.* at PageID # 509.

As summarized in the table above, Acio had at least 41 days of unexcused absences, covering 19 difference occurrences, in the 12 months before his termination.

## B.    Procedural Background

Acio dual-filed a charge of discrimination with the Hawaii Civil Rights Commission ("HCRC") and Equal Employment Opportunity Commission ("EEOC") on April 30, 2020, alleging discrimination based on disability under the ADA.  ECF No. 36-4 at PageID ## 467-68.  Acio admitted that disability discrimination was the only basis for his charge.  *See id.* at PageID # 427.

On December 2, 2020, the HCRC issued a Notice of Dismissal and Right to Sue letter based upon an EEOC investigation.  ECF No. 36-5 at PageID # 474.  That EEOC investigation had made the following determination:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

*Id.* at PageID # 471.

Following receipt of the right-to-sue letter, Acio timely-filed this suit on January 21, 2021.  *See* ECF No. 1.  The pro se complaint was filed on a preprinted form and checked boxes indicated that the action was brought for employment discrimination pursuant to (1) "Title VII of the Civil Rights Act of

16

1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin)," and (2) the ADA.  *Id.* at PageID # 4.  Acio alleged both disability discrimination (termination and retaliation) and a failure to accommodate.  *Id.* at PageID # 5.  The Complaint attached approximately 45 pages of documents.  *Id.* at PageID ## 12-57.

On January 26, 2022, Kyo-ya filed its Motion for Summary Judgment, ECF No. 35, along with a Concise Statement of Facts, ECF No. 36.  The court served Plaintiff with a "Notice to Pro Se Litigants" that informed him of his procedural obligations in properly responding to a motion for summary judgment, including informing him that:

> When a party makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you must set forth specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the movant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, there will be no trial.

ECF No. 37 at PageID # 555.  The matter was set to be heard on March 14, 2022.  *Id.*  On February 22, 2022, Plaintiff filed an Opposition that consisted of a two-page unsworn statement, which attached seven exhibits duplicating documents already attached to the Complaint.  *See* ECF Nos. 38 and 38-1 to 38-7.  Kyo-ya

17

filed its Reply on March 1, 2022.  ECF No. 39.  The court vacated the hearing on March 9, 2022, ECF No. 40, and decides the Motion for Summary Judgment without a hearing under Local Rule 7.1(c).

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *Id.* (citing *Celotex*, 477 U.S. at 325).  "When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial."

18

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks and emphasis omitted).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In re Oracle*, 627 F.3d at 387; *see also Anderson*, 477 U.S. at 247-48 (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

When considering a motion for summary judgment, the court views the facts and draws reasonable inferences in the light most favorable to the nonmovant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[T]he court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Moreover, it is not the court's duty to comb through the record to determine whether the evidence unmistakably favors one side or the other—the court must instead ask whether a fair-minded jury could return a verdict for the plaintiff based on the plaintiff's presentation of the evidence.  *See Anderson*, 477 U.S. at 252.

## IV.  ANALYSIS

### A.    Title VII Claim

Initially, to the extent the Complaint raises a Title VII discrimination claim based on race, color, gender, religion, or national origin, such a claim is

19

DISMISSED for failure to exhaust.  The only claim raised during the EEOC proceedings was disability discrimination under the ADA.  *See, e.g.*, ECF No. 36-4 at PageID ## 427, 467-68.  Nothing in that EEOC charge regarding disability discrimination could be "like or reasonably related" to a Title VII claim for race, color, gender, religion, or national origin, and nothing indicates that the EEOC investigated such claims.  *See, e.g.*, *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (reiterating that, although "specific claims made in district court ordinarily must [first] be presented to the EEOC," "the district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations.") (citation omitted)).  And, in any event, nothing in the record indicates that Kyo-ya made any adverse employment decisions because of Acio's race, color, gender, religion or national origin.  The court thus focuses on Acio's ADA claims.

## B.    ADA Discrimination Claims

Kyo-ya first argues that it prevails on the ADA claims because Acio has failed to properly respond after it met its initial burden at summary judgment.  And, indeed, in opposing the motion, Acio has failed to submit a responsive concise statement of facts, nor has he even filed a sworn declaration describing his version of the facts.  *See* ECF No. 38.  He has not authenticated any of the

documents he included with his opposing statement, nor is his Complaint verified in any respect.  At minimum, he has violated Local Rule 56.1(e)[5]—and under Local Rule 56.1(g), the court could deem admitted the material facts set forth in Kyo-ya's concise statement of facts.[6]

Nevertheless, in this instance and in the interest of deciding cases on the merits, the court will address the merits of Acio's ADA claims as if Acio would properly swear or affirm that his opposition statement is a true version of his testimony.  Given Acio's pro se status and that the documents he submitted duplicate the documents that Kyo-ya submitted with its motion, the court will not grant Kyo-ya's Motion for Summary Judgment based upon Acio's procedural errors alone.  *Cf. Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995) ("[A] motion for summary judgment cannot be granted simply because the opposing party violated a local rule."); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (reiterating the factors to consider before dismissing a complaint for failure to follow a local rule, including "the public policy favoring disposition of cases [on] their merits").

---

[5] Local Rule 56.1(e) provides, in part: "Any party who opposes the motion shall file and serve . . . a single concise statement that admits or disputes each fact set forth in the movant's concise statement."

[6] Local Rule 56.1(g) provides: "For purposes of a motion for summary judgment, material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."

### 1.    *ADA Standards*

"The ADA prohibits an employer from discriminating 'against a qualified individual with a disability because of the disability.'"  *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)).  To establish a prima facie case of discrimination under the ADA, whether based on termination or a failure to accommodate, a plaintiff must demonstrate that "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability."  *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (failure to accommodate); *see also*, *e.g.*, *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018) (disability discrimination).

ADA discrimination claims are subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014).  If a plaintiff-employee establishes a prima facie case of discrimination, "[t]he burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action.  If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual."  *Id.*

a.   *Disability*

To satisfy the first element of his ADA discrimination claim—

disability—Plaintiff must show that he had a "physical or mental impairment that

substantially limit[ed] one or more major life activities." *See* 42 U.S.C.

§ 12102(1)(A).  "Major life activities" include, but are not limited to, "walking,

standing, lifting, . . . and working." *Id.* § 12102(2)(A).  Whether a plaintiff's

disability "substantially limits" a major life activity is a fact-intensive,

individualized inquiry.  *See Rohr v. Salt River Project Agric. Imp. & Power Dist.*,

555 F.3d 850, 858 (9th Cir. 2009).  After Congress passed the Americans with

Disabilities Act Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553

(2008) ("ADAAA"), the term "substantially limits" "is to be 'construed broadly in

favor of expansive coverage' and 'is not meant to be a demanding standard.'"

*Vanhorn v. Hana Grp., Inc.*, 979 F. Supp. 2d 1083, 1092 (D. Haw. 2013) (quoting

29 C.F.R. § 1630.2(j)(1)(i)).

b.   *Qualified Individual*

To satisfy the second element of his ADA discrimination claim—

qualified individual—Plaintiff must show that, "with or without reasonable

accommodation, [he] [could] perform the essential functions of the employment

position."  42 U.S.C. § 12111(8).  The "essential functions" of a job can be

ascertained from the employer's "written description [of the job] [when]

advertising or interviewing applicants for the job." *Id.*  And as applicable here, "[i]t is a 'rather common-sense idea . . . that if one is not able to be at work, one cannot be a qualified individual.'" *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)).  Thus, a plaintiff in violation of an employer's attendance policy is not a "qualified individual able to perform the essential function of the job." *Hamilton v. GlaxoSmithKline, LLC*, 835 F. App'x 936, 936-37 (9th Cir. 2021) (quoting *Samper*, 675 F.3d at 1237-38).  "Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Samper*, 675 F.3d at 1239 (quoting *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) (en banc) (internal quotation marks omitted)).

      *c.*    *Causation*

      To satisfy the third element of his ADA discrimination claim—causation—Plaintiff must show that "the adverse employment action would not have occurred but for [his] disability." *Murray*, 934 F.3d at 1105.  Courts have found a lack of but-for causation when the employer shows that it would have terminated the plaintiff-employee regardless of the disability.  *See, e.g.*, *Whaley v. Bonded Logic Inc.*, 2020 WL 5593882, at *3 (D. Ariz. Sept. 18, 2020), *appeal*

24

*dismissed*, 2021 WL 1529303 (9th Cir. Feb. 23, 2021); *Meade v. Gen. Motors LLC*, 317 F. Supp. 3d 1259, 1281-84 (N.D. Ga. 2018).

### 2.   *Application of ADA Standards*

Acio's ADA claim fails, at minimum, at the second and third steps of the analysis.[7]  *See, e.g.*, *Allen*, 348 F.3d at 1114 (reiterating the steps "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability"). It is undisputed that Acio's job duties required his presence at the resort and that he fit squarely within (i.e., he violated) Kyo-ya's policy for "excessive absenteeism"—he was absent for 41 unexcused days within the 12-month period preceding his termination.  Kyo-ya groups these absent days into different "occurrences."  *See, e.g.*, ECF No. 36-13 at PageID ## 549; ECF No. 36-14 at PageID ## 551.  But whether absences are considered as absent "days" or "occurrences," Acio's absences far exceed the 6 unexcused absences permitted in

---

[7] At this summary-judgment stage under the ADAAA, the court assumes without deciding that Acio's back condition could substantially limit the major life activity of working. *See Nunies*, 908 F.3d at 435-36.  Construing the record in the light most favorable to Acio, there is ample evidence that Acio had a bad back—including a condition suffered on the job in 2012 prior to being hired at Kyo-ya, *see* ECF 36-5 at PageID # 475, and two motor-vehicle accidents after being hired that led to two 6-month leave of absences, *see* ECF 36-3 at PageID ## 351-52; *id.* at PageID ## 355-56.  And as late as August 10, 2019, Acio's physician certified that Acio's "chronic back pain" constituted a serious health condition under the FMLA, ECF No. 36-6 at PageID ## 499-500, even if he certified Acio able to return to regular duty on September 21, 2019, ECF No. 36-7 at PageID # 504.

the 12-month period prior to termination allowed under Kyo-ya's absenteeism policy. *See* ECF No. 36-9 at PageID # 536.

It follows that Acio was not a "qualified individual" within the meaning of the ADA standards, i.e., that he was "able to perform the essential functions of the job with or without reasonable accommodation." *Nunies*, 908 F.3d at 433. It is undisputed that Acio's job duties as a utility steward (such as assisting in the kitchen, washing dishes, and bussing silverware and dishes) required his physical presence, and he admitted that none of the duties could be performed at home. *See* ECF No. 36-3 at PageID ## 336-37 (deposition testimony); ECF No. 36-9 at PageID # 540 (job description). Acio's situation falls squarely within "the common-sense notion that on-site regular attendance is an essential job function," *Samper*, 675 F.3d at 1238, and the rule that "[e]xcept in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise," *id.* at 1239. Acio thus fails the second step of the ADA analysis. *Compare Sing v. Hawaiian Airlines, Inc.*, 2021 WL 5310896, at *7-10 (D. Haw. Nov. 15, 2021) (denying an employer's motion for summary judgment where questions of material fact remained as to whether the plaintiff's absences were fully encompassed within the employer's absenteeism policy).

Likewise, Acio necessarily fails at the third step—his termination was caused by his failure to satisfy the "excessive absenteeism" policy (as Kyo-ya repeatedly found), not by his alleged disability.  Acio cannot show that his termination "would not have occurred but for [his] disability."  *Murray*, 934 F.3d at 1105.  Stated alternatively, Kyo-ya has demonstrated that it would have terminated Acio regardless of a disability.  *See, e.g.*, *Sing*, 2021 WL 5310896, at *11 (reiterating the general rule, although denying the employer's motion for summary judgment because genuine issues of material fact remained as to whether absences were properly classified).

Analyzed under the *McDonnell Douglas* framework, even assuming Acio could establish a prima facia case, Kyo-ya has demonstrated a legitimate non-discriminatory reason for termination (excessive absenteeism), and Acio has no evidence of pretext.  *See Curley*, 772 F.3d at 632 (reiterating that if an employer provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the employee to prove that the reason given by the employer was pretextual).

In short, even construing the record in the light most favorable to him, Acio's ADA claims fail.

# V. **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendant Kyo-ya Ohana, LLC's Motion for Summary Judgment, ECF No. 35. The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 18, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Acio v. Kyo-ya Ohana LLC*, Civ. No. 21-00053 JMS-KJM, Order Granting Defendant's Motion for Summary Judgment, ECF No. 35